# 2000 DTA 172

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMON**
**PANEL II**

COLEGIO DE OPTOMETRAS DE PUERTO RICO
Apelante

v.

OPTICA LEE BORINQUEN Y OTROS
Apelados

Núm. KLAN-99-00760

San Juan, Puerto Rico, a 7 de agosto de 2000

Panel integrado por su Presidente, el Juez Gierbolini
y los Jueces Cordero y Hernández Torres

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nuestra consideración, el Colegio de Optómetras de Puerto Rico *("el Colegio")* mediante recurso de apelación y solicita que revoquemos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 11 de marzo de 1999. En dicha Sentencia, cuyo archivo en autos y notificación se efectuó el 21 de junio de 1999, el Foro de Primera Instancia declaró *"No ha lugar"* la petición de interdicto que presentara el Colegio contra Optica Lee Borinquen *("Optica Lee")* al amparo del Artículo 11 de la Ley Núm. 129 del 17 de diciembre de 1993, 20 L.P.R.A. sec. 545j.

### I

El 27 de septiembre de 1996, el Colegio presentó ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, demanda de *injunction* y reclamación en daños y perjuicios contra Optica Lee, su presidenta y principal accionista Evelyn Cáceres *("Cáceres")*, Edwin Montalvo *("Montalvo")* y Zahira Olivencia *("Olivencia")* por alegadamente haber contravenido las leyes que regulan la práctica de la optometría en Puerto Rico. El Colegio basó su reclamo en que Optica Lee estaba practicando ilegalmente la optometría, toda vez que Cáceres no tenía licencia para ejercer dicha profesión en Puerto Rico. Además, el Colegio adujo que Optica Lee había contratado a Montalvo y a Olivencia para trabajar como optómetras sin que estos tuvieran licencia para ejercer como tal. Luego de contestar la demanda, Optica Lee presentó una moción para que se desestimara la acción instada en su contra. En dicha moción de desestimación, Optica Lee argumentó: (1) que ejercía legalmente la optometría en la isla, ya que la Ley Núm. 80 del 26 de agosto de 1964, según enmendada, que crea la Junta Examinadora de Optómetras de Puerto Rico, 20 L.P.R.A. sec. 531, *et seq.* permite que tiendas, establecimientos o talleres vendan y/o anuncien la venta de espejuelos, si un optómetra, oculista u oftalmólogo representa dicho establecimiento y cumple con todas las disposiciones de la Ley antes citada; y (2) que al conocer que las personas empleadas no eran optómetras licenciados, prescindió de sus servicios, por lo que la causa de acción del Colegio se había tornado académica.

Con fecha de 12 de agosto de 1997, el Tribunal de Primera Instancia emitió Resolución declarando *"No ha Lugar"* la solicitud de desestimación presentada por existir controversias de hechos. En dicha Resolución, el Foro de Primera Instancia expresó que:

*"Optica Lee no era una corporación profesional con arreglo a las disposiciones de la Ley de Corporaciones. La misma es una corporación ordinaria autorizada para realizar negocios. La misma interviene en la práctica de la optometría en el curso ordinario de sus operaciones y si ésta contrata optómetras debidamente licenciados para realizar las funciones inherentes a la profesión, ello no infringe de forma alguna la Ley Núm. 80, supra. Optica Lee podría violar las disposiciones de la Ley, si permite que personal autorizado realice gestiones inherentes a la optometría o si tiene abierta al público mayor cantidad de sucursales de optómetras debidamente licenciados y colegiados como empleados".*

Luego de varios incidentes procesales, el Colegio desistió con perjuicio de la petición del *injunction* solicitado contra Olivencia. Posteriormente, el Colegio presentó una segunda moción en la cual desistía sin perjuicio de su reclamación en daños y perjuicios contra Optica Lee, Cáceres y Montalvo, pero reiteraba se expidiera *injunction* permanente contra éstos utilizando básicamente los mismos argumentos que esgrimiera en su escrito de demanda. ■ Con fecha de 11 de marzo de 1999, el Tribunal de Primera Instancia emitió Sentencia declarando *"Con lugar"* el desistimiento solicitado por el Colegio en cuanto a su reclamación en daños y *"No ha lugar"* la demanda de *injunction* presentada contra Optica Lee. El Foro de Primera Instancia concluyó que la acción instada era académica, toda vez que para la fecha en que se presentó la misma, Olivencia ya no trabajaba para Optica Lee. En cuanto a Montalvo, el foro apelado concluyó que el Colegio no lo puso en posición para determinar si para la fecha en que se presentó la solicitud de *injunction*, éste trabajaba en Optica Lee. Finalmente, dicho Foro expresó que el Colegio no había demostrado que la contratación de personas sin licencia para ejercer la optometría en Optica Lee, podía repetirse, por lo que su reclamo se tornó académico. ■ Oportunamente, el Colegio acude ante nos mediante recurso de apelación y plantea, como único error, que el Tribunal de Primera Instancia incidió al determinar que Optica Lee es una corporación comercial autorizada para practicar la

optometría en Puerto Rico y brindar servicios de salud al público mediante el empleo de optómetras licenciados. Con el beneficio de la comparecencia de Optica Lee mediante alegato, procedemos a resolver.

## II

Se nos cuestiona si tenemos autoridad para considerar el error planteado por el Colegio en esta etapa del procedimiento por no haberse solicitado *certiorari* de la Resolución interlocutoria emitida por el Tribunal de Primera Instancia.

Sabido es que una parte puede solicitar la revisión de una resolución u orden interlocutoria dictada por el Tribunal de Primera Instancia mediante la presentación de un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones dentro de los treinta (30) días contados a partir del archivo en autos de copia de la notificación de la resolución u orden. Véase artículo 4.002(f) de la Ley de la Judicatura, Ley Núm. 1 del 28 de julio de 1994, 4 L.P. R.A. sec. 22 (k); y Regla 32 (D) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 32. Dicho término es de cumplimiento estricto, excepto cuando mediaren circunstancias especiales debidamente sustentadas en la petición de *certiorari* que demuestren a cabalidad una justa causa para no cumplir rigurosamente con el término en cuestión. *Arriaga v. Fondo del Seguro del Estado*, ___ D.P.R ___ (1998), **98 J. T.S. 28**, a la pág. 688. El hecho de que el término para acudir en *certiorari* al Tribunal de Circuito de Apelaciones para revisar las resoluciones u órdenes dictadas por el Tribunal de Primera Instancia sea de cumplimiento estricto, no significa que el foro apelativo automáticamente goce de discreción para prorrogarlo. *Banco Popular de P.R. v. Mun. de Aguadilla*, ___ D.P.R. ___ (1997), **97 J.T.S. 152**, a la pág. 444. El poder para ejercer tal discreción surge sólo cuando la parte que lo solicita demuestra en la solicitud de *certiorari* justa causa para la tardanza. En ausencia de tales circunstancias, este Foro carece de discreción para prorrogar el término. *Id.*

Ahora bien, transcurrido el término antes aludido, este Tribunal está impedido de pasar juicio sobre una resolución interlocutoria, mientras el caso se encuentre bajo la consideración del Tribunal de Primera Instancia. Eso no significa, sin embargo, que transcurrido ese plazo, una resolución interlocutoria se convierte en final y firme. El foro de instancia podría modificarla en cualquier momento, sujeto a la doctrina de la *"ley del caso"*, es decir, si se convence de que su dictamen es erróneo. *Núñez Borges v. Pauneto Rivera*, 130 D.P.R. 749, 754-755 (1992); *Pueblo v. Carrión Rivera*, 111 D.P.R. 825, 827-828 (1981). Al no ser final y firme una determinación contenida en una resolución interlocutoria, el dictamen puede atacarse en una apelación, luego que el Tribunal de Primera Instancia dictara sentencia. *Id.* Tratándose de una determinación interlocutoria, existe la posibilidad de revisar el dictamen del Foro de Primera Instancia cuando se dicte la sentencia final, si ésta resulta adversa y aún estima importante revisar la determinación interlocutoria por afectar ésta la decisión del caso. *Banco Popular v. Mun. de Aguadilla*, ___ D.P.R.___ (1997), **97 J.T.S. 152**, a la pág. 446 (nota al calce número 2).

En el caso de autos, el Tribunal de Primera Instancia resolvió mediante Resolución interlocutoria con fecha de 12 de agosto de 1997 la controversia sobre si Optica Lee, como entidad corporativa, estaba autorizada para hacer negocios en Puerto Rico. Si bien es cierto que este asunto no fue discutido en la Sentencia emitida por dicho Foro el 11 de marzo de 1999, la Resolución emitida el 12 de agosto de 1997, meramente adjudicó la improcedencia de la solicitud de desestimación que en aquel momento presentó Optica Lee. En la referida Resolución, de manera colateral, el Foro de Primera Instancia adjudicó el asunto sobre la legalidad del negocio llevado a cabo por Optica Lee. Por lo tanto, aunque es la ley del caso, la determinación tomada nunca advino final y firme y puede ser revisada por este Tribunal como parte del recurso de apelación que hoy nos ocupa.

## III

Por otro lado, el Artículo 1 (c) de la Ley Núm. 80 del 26 de junio de 1964, 20 L.P.R.A. sec. 531, establece que:

*"Se entenderá que está interviniendo en la práctica de la optometría, toda aquella persona natural o jurídica que anuncie como que lleva a cabo exámenes de la vista; y/o intente practicar las materias de la optometría; que abriere o tuviere una tienda, óptica, establecimiento, despacho o taller con ese objeto; Disponiéndose, sin embargo, que toda tienda, óptica o establecimiento, despacho o taller que estuviere representado por un*

*optómetra, oculista u oftalmólogo autorizado en Puerto Rico y que estuviere o hiciere visitas periódicas al mismo y que cumpla con las disposiciones y reglamentos de las secs. 531 et seq. de este título, podrá anunciar y vender al público espejuelos de lentes oftálmicos y/o cristales con o sin foco, excepto que dicho optómetra, oculista u oftalmólogo solamente podrá representar una óptica, tienda, establecimiento, despacho o taller a la vez; y disponiéndose más aún, que excepto en el caso de los oftalmólogos, oculistas u optómetras o en el caso de técnicos supeditados debidamente a un oftalmólogo, oculista u optómetra, la presencia de cualquier material oftálmico y/o instrumental para examinar la vista, en poder de cualquier persona natural o jurídica no autorizada por las secs. 531 et seq. de este título para practicar la optometría en Puerto Rico, constituirá evidencia prima facie de práctica ilegal de la optometría en esta jurisdicción".*

Por su parte, el Reglamento de la Junta Examinadora de Optómetras, Regla. Núm. 4614 del 3 de enero de 1992, en su parte VII lee como sigue:

*"INTERVENCION DE PERSONAS NO OPTOMETRAS NI OFTALMOLOGOS Y DE ENTIDADES JURIDICAS EN LA PRACTICA DE LA OPTOMETRIA.*

*Artículo I- Interpretación por la Junta de la frase "Representado por un optómetra, oculista u oftalmólogo autorizado en Puerto Rico" en la ley de optometría."*

*La Ley Núm. 80 del 26 de junio de 1964, según enmendada, contiene [sic] su Artículo I una definición de la práctica de la optometría que permite la intervención en esta profesión de diversos tipos de personas naturales y jurídicas. En este sentido, dicho Artículo I dispone que "toda tienda, despacho, o taller que estuviere representado por un optómetra, oculista u oftalmólogo autorizado en Puerto Rico y que estuviere o hiciere visitas periódicas al mismo y que cumpla con las disposiciones y reglamentos de esta ley, podrá anunciar y vender al público espejuelos de lentes oftálmicos y/o cristales con o sin foco, excepto que dicho optómetra, oculista u oftalmólogo solamente podrá representar una óptica, tienda, establecimiento, despacho o taller a la vez.*

*Con el propósito de establecer claramente la manera en que se deberá operacionalizar esa relación de representación que permite la Ley Núm. 80 y fijar la esfera de responsabilidad que recae sobre el optómetra que decide representar uno de esos establecimientos, la Junta dispone, mediante este reglamento, los siguientes requisitos:*

*1. Cada optómetra licenciado en Puerto Rico podrá representar a una sola óptica, tienda, establecimiento, despacho o taller a la vez. Se requerirá al establecimiento que informe a esta Junta anualmente, bajo el Artículo II de esta Parte VII del Reglamento, cuál optómetra le está representando.*

*2. La representación optométrica para estos establecimientos conlleva la supervisión directa y atención personal del optómetra que representa de todos los exámenes de la vista y servicios relacionados que se presten en el establecimiento que ostenta la representación. Conforme a la Ley Núm. 80 en el Artículo I citado, el optómetra que representa deberá estar o hacer visitas periódicas al establecimiento de modo tal que sea él, personalmente, el encargado de realizar las labores de optometría y velar por la calidad de éstas mediante el ofrecimiento de una asistencia personal a los clientes. La responsabilidad profesional del optómetra que representa a un establecimiento es siempre similar a la del que atiende a los clientes en su consultorio personal o en cualquier otro escenario de trabajo.*

*3. El optómetra que representa a un establecimiento tiene, además, responsabilidad como profesional por: (a) los expedientes clínicos de los pacientes que acuden a recibir servicios a dicho establecimiento; (b) la exactitud y eticidad de los anuncios que se publican para promover los servicios o mercancías de dicho establecimiento.*

*4. La infracción de estas normas sobre la representación bajo el Artículo I de la Ley Núm. 80 citada, "será motivo para que la Junta investigue e inicie procedimientos dirigidos a la imposición de sanciones disciplinarias*

*según los casos".*

*ARTÍCULO II. REQUISITOS DE REPRESENTACION*

*Estos son los requisitos que habrá de cumplir, por virtud de la Ley Núm. 80 de 1964, según enmendada (Práctica de Optometría) toda persona no optómetra ni oftalmólogo y toda entidad jurídica (e.g. tiendas, ópticas, cadenas de ópticas, centros visuales, despachos, talleres o cualquier otro tipo de negocio, sus unidades o sucursales) que esté interviniendo o se proponga intervenir en la práctica de la optometría:*

*Sección 1.1- El propietario del negocio o empresa deberá radicar por escrito ante la Junta Examinadora de Optómetras y dentro de los primeros sesenta (60) días de cada año natural, un informe escrito y jurado que contenga la siguiente información:*

*1. Nombre, licencia, número de registro de cada optómetra, oculista u oftalmólogo que representa cada establecimiento, según arriba se detalla.*

*2. La dirección completa de cada establecimiento y los días y horas de trabajo.*

*3. Dicho informe será firmado y jurado por el dueño, gerente, distribuidor o encargado de cada establecimiento y los días y horas de trabajo.*

*Sección 1.2- Será deber del propietario de dichos establecimientos, el informar a la Junta de cualquier sustitución o cambio del profesional que le representa o del cierre de cualquier establecimiento. Dentro de un término de treinta (30) días de haber ocurrido dicha sustitución, cambio o cierre.*

*Sección 1.3- Será deber de toda persona natural o jurídica que intervenga en la práctica de la optometría, el cumplir con la Ley de Optometría, los reglamentos de la Junta y otras leyes y reglamentos aplicables.*

*Sección 1.4- La Junta no admitirá como representante de un establecimiento que interviene con la optometría, a ninguna persona que no sea optómetra u oftalmólogo y que tenga su licencia profesional debidamente recertificada y registrada, según las leyes aplicables.*

*Sección 1.5 - Una vez cumplidos por cada establecimiento los requisitos de este Artículo II, la Junta podrá emitir certificaciones al efecto.*

*Sección 1.6- El incumplimiento con alguna de las disposiciones de este Artículo II será causa suficiente para que la Junta investigue e inicie procedimientos dirigidos a la imposición de sanciones, tales como multas administrativas, órdenes de cesar y desistir judiciales o cualquier remedio legal adecuado."*

Precisamente, el artículo 11 de la Ley Núm. 129 de 17 de diciembre de 1993 que crea el Colegio de Optómetras de Puerto Rico, *supra*, expresa lo siguiente:

*"El Colegio podrá solicitar del tribunal correspondiente una orden de interdicto, un auto inhibitorio o cualquier otra providencia que fuere pertinente para cesar y desistir de actos o prácticas contrarios a los propósitos de este capítulo, o que resulten en perjuicio o violación a sus disposiciones o de la determinación de suspensión de la licencia para ejercer la optometría, decretada por la Junta Examinadora.*

*El Colegio incoará la acción procedente en el tribunal correspondiente sin necesidad de prestar fianza, contra toda persona que sin tener licencia válida de optómetra expedida por la Junta Examinadora, practique la optometría en esta jurisdicción, así como contra todo optómetra que a pesar de haber sido suspendido del ejercicio de la profesión por la Junta Examinadora, de conformidad y por cualesquíera de las causas impuestas en la ley, intentase proseguir, o de hecho continuare practicando la profesión de optómetra.*

**501**

*Dicha orden de cesar y desistir podrá, además, solicitarse y hacerse extensiva y aplicable a toda persona, socio, sociedad, patrono, corporación, organismo, cooperativa, instrumentalidad y entidad, y a los agentes y empleados de éstos, que bajo cualquier convenio o acuerdo hayan venido utilizando o valiéndose, o proyecten utilizar o valerse del optómetra suspendido, del optómetra que no posee licencia, así como de personas que no son optómetras y no poseen una licencia válida para ejercer la profesión, para que terminantemente se abstengan o cesen y desistan de esa práctica.*

*El Colegio podrá optar por utilizar los servicios de su asesor legal o podrá contratar los servicios de abogados privados cuando lo estime necesario para que lo representen en este tipo de acción."*

## IV

A la luz de las normas arriba expuestas, debemos determinar la procedencia del *injunction* solicitado por el Colegio contra Optica Lee.

El *injunction* es un remedio extraordinario que debe ser expedido con sobriedad ante una demostración de una violación intensa y clara de un derecho. *A.P.P.R. v. Tribunal Superior,* 103 D.P.R. 903, 906 (1975). En cuanto al *injunction* especial como el dispuesto en la Ley Núm. 129 del 17 de diciembre de 1993, *supra,* al preestablecerse las circunstancias en que podría dictarse, se le facilita al tribunal la ponderación de los criterios que guían el ejercicio de su discreción: la existencia de un remedio adecuado en ley, la irreparabilidad del daño y el balance de intereses. *Puerto Rico Telephone Co. v. Tribunal Superior,* 103 D.P.R. 200, 202 (1975); Fiss, Owen M., *Injunctions,* New York, 2da Ed., pág. 73 (1984); Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil,* **Publicaciones J.T.S.,** pág. 372 (1979). Al balancear estos intereses, se deben examinar los propósitos de la legislación y si la prueba presentada demuestra *prima facie* que el demandante está protegido por la ley invocada. *Cobos Liccia v. De Jean Packing Co.,* 124 D.P.R. 896, 903 (1989).

El argumento esgrimido por el Colegio en el caso de autos a los efectos de que Optica Lee no es una corporación de servicios profesionales y, por tanto, debe cesar de ejercer la optometría en Puerto Rico, carece de méritos. El Colegio no tiene causa de acción contra Optica Lee bajo el Artículo 11 de la Ley Núm. 129 del 17 de diciembre de 1993, *supra.* Veamos. El artículo 1 (c) de la Ley Núm. 80 de 26 de junio de 1964, según fue interpretado mediante el Reglamento de la Junta de Optómetras, claramente autoriza a personas jurídicas a operar establecimientos, tiendas, despachos, talleres, cadenas de ópticas, etc., con el propósito de ofrecer al público en general exámenes de la vista y venta de lentes correctores, siempre y cuando estuviere representada por un optómetra. Según hemos discutido, este carácter representativo en los casos de personas jurídicas, se describe como la supervisión y atención personal del optómetra que representa al establecimiento en todos los exámenes de la vista y servicios relacionados que se presten. A esos efectos, el antes citado Reglamento impone al dueño, gerente o encargado, entre otras cosas, el deber de notificar a la Junta Examinadora de Optómetras el nombre, licencia, número de registro de cada optómetra representa cada uno de los establecimientos. Una vez se cumplan los requisitos establecidos en el Artículo II, Parte VII, del Reglamento de la Junta Examinadora de Optómetras, *supra,* dicha entidad debe certificar al optómetra seleccionado por el dueño o encargado del establecimiento comercial como representante del mismo. Asimismo, la presencia de un optómetra en este tipo de establecimiento asegura que se cumpla el propósito fundamental de la reglamentación que regula la práctica de la optometría en Puerto Rico. A saber, que el pueblo reciba servicios y bienes de salud visual de la mejor calidad, sin barreras de clase alguna que impidan o limiten la accesibilidad y el disfrute de los mismos. Por esta razón, el optómetra designado como representante de una entidad jurídica que opera un establecimiento dedicado a la prestación de servicios relacionados a la salud visual, es la persona éticamente responsable por los servicios allí prestados. Debido al carácter especial de la Ley Núm. 80 del 26 de junio de 1964, *supra,* y el Reglamento de la Junta Examinadora de Optómetras, *supra,* dicha responsabilidad compete únicamente al optómetra, por lo que no se le puede delegar a la persona natural o jurídica dueña del establecimiento.

Por otro lado, el mismo Reglamento de la Junta Examinadora de Optómetras, *supra,* deja la puerta abierta para que no tan sólo las corporaciones ordinarias representadas por un optómetra puedan practicar dicha profesión, sino que puedan incluirse otro tipo de corporación como lo es la de servicios profesionales. ■ A esos

efectos, el Artículo I, Parte VII del citado Reglamento, permite que diversos tipos de personas jurídicas practiquen la optometría. Además, el preámbulo del Artículo II, Parte VII, de dicho Reglamento menciona los requisitos que habrá de cumplir *"toda persona no optómetra ni oftalmólogo y toda entidad jurídica que esté interviniendo o se proponga intervenir en la práctica de la optometria"*. ■ Claro está, en el caso de las corporaciones profesionales, que dicho sea de paso fueron legalmente autorizadas a brindar servicios profesionales con posterioridad a la aprobación de la Ley Núm. 80 de 26 de junio de 1964, *supra,* ■ uno de sus accionistas puede a su vez ser el oftalmólogo representante de tal entidad a los efectos de la responsabilidad ética, la cual, a los efectos de la legislación y reglamentación existentes en el campo de la optometría, no se puede delegar a la entidad jurídica.

En vista de que no obra en el expediente ante nuestra consideración prueba alguna a los efectos de que Optica Lee no posea en cada uno de sus establecimientos un optómetra licenciado que represente a la empresa y supervise los procedimientos oftálmicos que allí se lleven cabo, o que de cualquier otra forma se incumplan las disposiciones legales que regulan la práctica de la optometría en Puerto Rico, no procede la expedición del *injunction* solicitado.

## V

Por los fundamentos antes expuestos, procedemos a confirmar la Sentencia apelada.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General